Thank you, Your Honor. May it please the Court, my name is William Weinhoff. I'm a Deputy Attorney General in the State of Hawaii, and I'm here on behalf and arguing on behalf of the defendants in this case. Your Honors, the point of both quasi-judicial immunity and qualified immunity is that they are privileges against suit, not just against loss or damages. The importance of this aspect is highlighted by the unusual fact that we are able to appeal denial of this privilege immediately to this Court. The District Court here erred by applying Pullman abstention. Because of this error, the seven individual defendants in this case have been subject to this suit. As of today, almost exactly two years it was violated. When you say the District Court erred by applying Pullman abstention, do you mean by abstaining from deciding the questions of immunity or by applying Pullman abstention at all? I believe that it applies – that's a – the two questions go together. In my view, it erred in applying Pullman abstention to this aspect of the case at all. And it also erred because it failed to take into account that the tension between the two and that the defendants are entitled to their immunities at the stage of the case. Your clients are entitled, in your view, to immunity from damages claims, correct? Yes, Your Honor. And Your Honor, may I at this point note this, because there is an error in my brief that I saw in the last couple of days. I cited Moore for the proposition that they were also entitled to immunity for declaratory and injunctive relief. That is incorrect. That only applies to Federal officers. Okay, so I just want to just figure out precisely what you're arguing to us. I've understood what you're saying to us is that the District Court should have addressed your immunity claims with respect to the Federal claims, right? Yes, Your Honor. And with respect to damages, right? Yes, Your Honor. With respect to damages under Federal claims? Yes, Your Honor. And it didn't, and we should either address that ourselves or order the District Court to address it? We believe that you should address it yourself, Your Honor. Okay. That would still leave your clients in the case with respect to the Federal claims for declaratory and injunctive relief, correct? Yes, Your Honor. But, I mean, I can tell you that none of them, by the time we get back to the District Court, none of them will be on the LUC. Okay, but it would leave somebody in those official positions. And it wouldn't resolve the claims against your clients as a matter of State law because those are claims, if the District Court acted correctly, that it has asked the State Court to determine. Well, we believe that they had acted incorrectly in not determining those claims. Well, this is sort of a strange situation. We have the State in Federal court saying to a Federal district judge, you should resolve State law claims, and the district judge saying, no, no, I really prefer State courts to resolve those claims. Well, but that's, I mean, that's the whole point of Pullman abstention, and that's really the heart of our argument. That's the point of Pullman abstention, but it's normally the State actors saying, yes, we do want our State courts to resolve State law claims, and it's normally the plaintiffs who are here saying, oh, no, don't send it back to those State judges. Do it yourself. Why are we in a reverse situation here? Well, you know, there's some real practical questions, and I'm not sure, I guess from my experience, I'm not sure that I agree with you that just as kind of a, you know, matter of statistics that the State law defendants are asking State judges to do it, I can tell you that we very seriously think about removing Federal law cases to Federal court because we believe in many cases that the Federal judges are more apt to be able to understand those cases. So with respect to the question of Federal law immunity, that is solely a question of Federal law. Let me ask you this, if I could. Assume for the purposes of this question that Pullman abstention was appropriate for the underlying merits. Yes, Your Honor. Should the district judge nonetheless have proceeded to answer the qualified immunity questions? Yes, Your Honor. How so? Because I think, well, I mean, okay, I'm just going to accept the premise of your case. Yeah, right. I'm not asking you to concede. Okay, fair enough. You're giving me that I'd prefer to not argue it that way, but I think the answer to the question is yes. I was not able to find any cases on point on that question. I thought about it very carefully when I was doing this, and I was unable to find any questions that resolved the tension between the two. I think the answer to the question should be yes because there is, in fact, a tension between the Pullman abstention doctrine and the fact that the immunities are the immunities from suit and from being subject to the suit for the two years. Okay, it appears to me that of the two different grounds for individual damage immunity, the quasi-judicial immunity, which is absolute, might be easier to answer independent of what might be at issue in Pullman abstention. The qualified immunity question as to what they were entitled to do, that seems to me may be tied up in some fashion with the merits as to whether or not they were acting properly. And I'm not sure that, and I'm just plain straight in saying this, I am not sure what the answer is that the Pullman abstention is proper, whether we shouldn't also be waiting with respect to qualified immunity, not quasi-judicial, but the qualified immunity question, because the answer to the Pullman abstention questions and the state law questions may have some bearing on qualified immunity. It's possible that those two are more closely tied. I believe that the absolute immunity is the better argument, Your Honor. It's the easier one, assuming they are acting in a quasi-judicial capacity. Now, the district judge didn't reach that question. Should we reach it? I think you should, Your Honor, and the reason is, for example, I cited under the pressure here, oh, Guggenheim, Your Honor, which I cited in the briefs that you folks asked us for at the end of the day. There was a question there. Admittedly, it was a different question, but the question is sort of raised here. There's no real reason for my clients to have to go through the trip again. If we go back downstairs, then what's going to happen is the judge is going to rule or not rule. If she rules against us, then we could and very likely would appeal again, and we'd have another two-year trip up there. If she rules in our favor, then ultimately that's still subject to appeal. So we would appeal. Is there another alternative that doesn't involve the latter? What if we wait until the Hawaii Supreme Court does whatever it's about to do? Will that illuminate these issues for us? It's not going to illuminate. I believe the answer to that is no, Your Honor, because what happened is, as you know, the bridge sued us in state court. We removed it to federal court. But that lawsuit was brought before any of these at about the same time that the- Because it was an administrative appeal from the- So, in other words, I guess what I'm fumbling around trying to say is they sued us before they knew the answer to the question, and I don't think there's any reason to think they're going to go away if we win in state court. Just help me for a second. Sure. The circuit judge, as I understand it, has found some constitutional infirmities with what occurred. Yes, Your Honor. And that's in the administrative appeal of what I'll just call the zoning decision. Yes, Your Honor. And that decision is now on appeal to the Hawaii Supreme Court, which, as I understand it from you all, is about to hear arguments. Yes, Your Honor, on June 25th. Okay. It's on your calendar. Are you arguing it? Yes, sir. Oh, okay. So how fast does the Hawaii Supreme Court ordinarily render a decision after argument? Well, that's a very good question. I'll let my learned counsel weigh in, too, but the answer to that, in my experience, is pretty fast. Okay. When we get that answer. Six months, most likely. When we get that answer, whatever it is, either that the proceedings below were perfectly okay or that they had some infirmity, will that help us? No. Or the district judge in this case? No, Your Honor. Well, how bad for the qualified immunity for the due process claim, for example, which was a violation of state law? Will that tell us whether there was a violation of state procedure or not? Your Honor, I guess I'm going to answer that one slightly different than I answered Judge Hurwitz's question. I think, going back to what Judge Fletcher said, is, yes, it might bear on the qualified immunity, but I believe it will not help you in any way, shape, or form with respect to the absolute immunity. That's my belief. Okay. And, you know, those state Supreme Court justices are not always reliable. I haven't been one once, I can tell you. But if I were the district judge in this case and I were trying to address the merits, wouldn't I find it helpful on the issues that were raised in this case to know what the state Supreme Court said about the state law claims? Not with respect to absolute immunity, Your Honor. We filed a motion. Oh, no, I'm going back to your point that Pullman abstention was inappropriate in general. Yes. And I'm asking why wouldn't the state decision in the underlying administrative proceeding be helpful in figuring out what form of property your clients had and whether or not it was taken away, which is really the underlying issue, isn't it? It would be very helpful. Their clients had it. It would be very helpful with respect to the underlying issue, but it will have no bearing whatsoever on the issue of whether or not my clients are in absolute immunity. On immunity. On immunity. But I'm asking the broader Pullman question. Okay. The broader question is did the district judge appropriately abstain from deciding the constitutional issues? I don't have any issues. I don't have any problem with that, Your Honor. Oh, that's what I was asking at the beginning. I'm sorry. On the underlying issue, yes. So you think Pullman abstention was appropriate with respect to the underlying issue? Well, you know, here's what the district judge pointed out and you saw in the pleadings When we first went over there, I was the one who asked for Pullman abstention, but only with respect to the taking claim. And I thought the reason, frankly, the reason that I didn't want to have the case proceed on the merits with respect to the taking is at the time it would have been a permanent taking. Now if Judge Stranz is right, then it's a temporary taking, and I'm perfectly happy to go ahead. But I don't doubt that, Your Honor, that with respect to the underlying question, that it will in fact be helpful to the district judge to know what the state law rules on that. So that's not with respect to immunity. You're only quarrel with what the district, and I'm sorry if I misunderstood you at the beginning. Not at all. You're only quarrel with what the district court did was in not reaching your quasi-judicial and qualified immunity claims. Yes, Your Honor. That's the only issue that we've appealed. We've moved below to dismiss all of the claims except for the claim of taking. And we lost, obviously, everything. She abstained with respect to it. The only thing on appeal here is with respect to the seven individual commissioners who were denied their right to not have to go to trial and not proceed in this case. And, Your Honor, I appreciate the opportunity, of course, to answer questions. I have my own thoughts, but I want to answer your question. The question I have is with respect to taking. I think it seems to me perfectly sensible what you said, is if the Hawaii Supreme Court affirms what the administrative judge did, then most we have in terms of taking is temporary. Yes, Your Honor. Is it possible that we will, if the Hawaii Supreme Court does not agree, that we might have some help on what might then turn out to be a permanent taking? The reason I'm asking this question is I'm haunted by Williamson County. Yes, Your Honor. The court in Williamson County, Supreme Court, tells us that we in the federal court system can't decide whether or not there's a taking until we know what the state's going to do. Yes, Your Honor. And we don't know what the state's going to do until the state has finished not only with its administrative process but also with its judicial process. And will we know what the state's going to do, assuming that the decision of the defendant counsel is allowed to stand? What are we going to know or not know with respect to the permanent taking claim that will then exist? Right. You know, Your Honor, what I understand at Williamson County is I don't think Williamson County has ever been applied to the – obviously the paradigm in Williamson County is – the question is what is the agency going to do? And that's done. I don't think Williamson County, the first prong of Williamson County – I hear your question. I think I'm hearing it. And I don't believe that the first prong of Williamson County requires that there be a final decision through the state courts. In Williamson County, the agency has made a final decision here. Nobody disputes that. It's a little strange because Williamson County was originally dealt with a case filed in federal court. And the question was here your opponents filed the case in state court. I think appropriately saying we have a bunch of claims, one may follow the other, but we ought to make them all at the same time. And you brought us over to federal court, so it's a little bit hard for me to apply Williamson County. You know, it leads to a lot of oddball things. I've cited in my cases situations in which, with respect to the second prong now, the case that was originally filed, usually it's a state or local agency, removes it to federal court and then moves to dismiss on the basis of ripeness. We haven't tried to do that here. So the Second and Fourth Circuits said, under those circumstances, the second prong doesn't apply. Okay. I think you cited, or somebody cited, Santa Sota in some of the other cases. So do you disagree with that, that the second prong doesn't apply? No, I agree. You agree with that? That's why we haven't tried to – well, what I told the district court and what I continue to believe is that by moving it to the federal court, we've, of course, waived our Eleventh Amendment immunities, we reserved other defenses. But what I specifically told the district court when she asked that same question is it would be, in that respect, as if we were in the state court, we did not intend to move to dismiss on the basis that they needed to exhaust their state court remedies first. If they had been in state court, where they originally thought to be, we wouldn't have moved to dismiss it on the basis that it was ripe and could not have moved to dismiss it on the basis that it was ripe. And so our view was by removing it to the federal court, we did not intend to pursue that decision. Your Honor, if I might, there was also another thing that I wanted to supplement or talk about with respect to my briefing. The court had asked us this very interesting question about Williamson County, which I actually have personally been following for a number of years and find pretty interesting. So in my brief, I said one of the questions was, you know, we have the Ira Mandes decision, I'm sure I'm not saying that correctly, and in Crown Point after Lingle repudiated that. I was involved in the briefing on Lingle, and so I knew a little bit about that. So then the question that I had talked about in the brief was did Williamson County apply to the other claims, the equal protection and substantive due process. Crown Point says that those are independent claims, and then I said that I was unable to find a case in which the Ninth Circuit had talked about whether Williamson County ripeness applied. And in continuing to think about that, I would now ask the court to consider North Pacifica at 526 F. 3rd 478, which I believe does say that Williamson County ripeness requirements do not apply to these separate claims of substantive due process and equal protection, which is in any event the same result that I had argued for in the brief that you both asked me for. Well, we've just taken you over time. I know, I know. Let's hear from the other side, but we will give you a chance to respond. Yeah, I appreciate it, Your Honor. It was my pleasure to answer your questions. I enjoyed doing so. Thank you. Thank you. May it please the Court, Bruce Foss on behalf of Appali Cross Appellant Bridge, Analaya, LLC. And hearing the colloquy about Williamson reminds me that this is difficult stuff, at least it is for me. But at the end of the day, I think there's two basic facts that guide this Court's path. The first is that unlike most of the reported cases in this area, Bridge filed this complaint in state court, and it included the parallel federal claims. As the U.S. Supreme Court said, it's perfectly proper under San Remo, but it reasonably expected to get on the state court calendar and proceed as soon as possible, which leads to the second basic fact, which is, to be blunt, we've been waiting an awful long time. It's been more than three years since the LACC issued what Judge Stranz found to be an unlawful order. It's been more than two years since Judge Mulway issued her stay order, staying all claims. And during that time, we, Bridge, have been left not just without a remedy, but without an action, no vehicle upon which to seek injunctive or declaratory relief should that become necessary. What would you have us do? I would respectfully ask you to affirm the majority of Judge Mulway's decision on abstention, and then following the V.H. Property case and Judge Morrow's, I think, very well-reasoned opinions, remand the state claims to state court. How can we remand? Do we have any authority to remand? You didn't make a remand motion. We're outside of the window for a remand. We have subject matter jurisdiction. So wouldn't we just have to dismiss the state claims? No. And that was the point. What's the authority for us to remand? Since I think you didn't move for remand. And the period for remanding a removed case has expired. And Judge Morrow addresses this point here. And part of it is the inherent. Well, there, I mean, a remand motion had been made, and she was deciding a remand motion. No, I understand, Your Honor. But here, the situation is not necessarily the classic remand situation. You have a stay that has been imposed pursuant to Pullman. And at that point, the court decides, because supplemental jurisdiction is discretionary, whether it's appropriate. And 28 U.S.C. 1367 essentially codifies Gibbs. We all learned that in first year. If she were to dismiss your state law claims, wouldn't 1367D preserve your ability to rebring them in state court? Fragile limitations would have been told in the meantime. The question is whether there's a remand or a dismissal. Do you want a dismissal? Assuming we decide we don't have authority to remand? No, I don't. Would you rather be in federal court on them rather than have them dismissed? To be very candid, I would like to proceed with the litigation. We have the forms available. But to get to your point. Well, we don't want to put you in a position where you've given up your claims. The question is if we lack the authority to remand your state law claims, as Judge Yakuta suggested, then it seems to me there's only two options. One is to leave them in federal court, and the other is to dismiss them and let you refile them in state court. Which is your preference? If the court determines that that is the appropriate law, then I think the better path is to avoid burdening Bridge to have to refile, to simply leave the claims in federal court. But the court, again, can exercise its jurisdiction. 28 U.S.C. 1367 says it can decline to exercise supplemental jurisdiction if, among other reasons, the claim raises novel or complex issues of state law. And I think the briefing in this matter shows that it does. So I think this court does have the authority to, as Judge Morrow did, direct the state law claims be sent back. Maybe remand is the improper term, but sent back to state court. Well, although 1367 allows the district judge to dismiss the state claims that would otherwise be supplemental, but I think it's a discretionary decision of the district court. I'm a little reluctant to make that decision myself at this level. I think it's a district court decision, which we would then review for abuse of discretion. Isn't that right? I understand, Your Honor. But the discretionary exercise of supplemental jurisdiction, and this goes all the way back to United Mine Workers v. Gibbs, is based on comedy, judicial efficiency, and perhaps most importantly, fairness to the litigants. That's what the U.S. Supreme Court said back in 1966. And again, it comes down to, with all due respect, why do we have to wait at this point? We didn't start this in federal court. We started in state court, and that's why I would like to wait. Speaking of waiting, what's your estimate as to how likely the Hawaii Supreme Court will come out quickly with a decision on the case that's going to be argued to them in about two weeks? I do read all the Hawaii Supreme Court cases and have tried to track that question. In general, recently the Hawaii Supreme Court has gotten much better. They've cleared their backlog. It's running about three to six months from oral argument in general. This is not, as you might imagine, or can surmise in the briefs, a run-of-the-mill case. So it could be a little longer. But I would say at the outside, probably six months. And would you think that whatever decision the Hawaii Supreme Court reaches, and obviously you want them to reach a decision in your favor, but whatever decision they reach would be very instructive to the disposition of the state claims in this case? I do. You asked that question, would it illuminate, and it certainly will. How about for the quasi-judicial immunity? That seems like a tougher argument. What's the federal law issue that would shed any light on the quasi-judicial immunity? Well, thanks for that question, Judge Ikuda, because I respectfully disagree with Bill on that point. The predicate of his argument is what the Land Use Commission commissioners should have done if they'd followed all the contested case proceedings. But that's ultimately not what's decided under quasi-judicial immunity. The basis for immunity is what they actually did. Is that right? I thought when we're considering quasi-judicial immunity, we look at what the statute says even if the judge misapplied or violated the procedural rules or whatever. I mean, isn't that the point, that they have immunity even if they screw up? We like that rule, by the way. And most judges, too, do, Judge Ikuda. No, in short, what Zamsky teaches is, and this has been the Ninth Circuit law for more than 20 years, that the court looks to whether or not essentially in a situation like this, not a judge, but a local land use agency where they played multiple roles. And here, they did play multiple roles. They created new procedures and rules in an ad hoc fashion and applied those to bridge in an arbitrary manner. They set deadlines and new conditions and interpreted those to have the force of law. They monitored compliance by demanding status reports and asking us to appear before them and monitor compliance. They actually initiated the action before the Land Use Commission to reclassify through their order to show cause. And then having done so, they acted in the role of prosecutor. At least one of the commissioners actively sought to introduce evidence in support. I apologize. Could I ask you, because I was looking for the case that says it's the comprehensive procedures and not the actual practice of an agency that we consider in reviewing immunity, quasi-judicial immunity under a case called Mishler v. Clift. I didn't really see Zamsky doing anything different, because it said in the structure of the statute, the commissioners had the authority to determine how to comply and they had executive and administrative authority. So here, Zamsky says if you have executive and administrative authority, maybe you don't get, Land Use Commissioners don't get qualified immunity. So assuming, I mean absolute judicial immunity, so assuming that Mishler and that rule remains the law that we look at, the procedure is set forth in those regulations and statutes, not what they actually did, are they still not entitled to quasi-judicial immunity? They are not entitled to quasi-judicial immunity Once they step outside the role that has traditionally been assigned to a judge in this type of proceeding, and that's the teachings of the U.S. Supreme Court, and there's a number of district court cases here. And based on the actual facts, to finish my example, here they acted as a lawmaker in the sense that they created rules that had the force of law and applied to them. I've never heard of a judge doing that. What? I've never heard of a judge making law. But the difference here, Your Honor, is what a judge can't do is in the course of a proceeding, a judge can't create local, new local rules, new rules of civil procedure, and then say, oh, I'm only applying it to this person before the court. Why isn't that just a really bad judicial, quasi-judicial decision, as opposed to a legislative act? In other words, we may make all kinds of stupid errors and we may apply the rules incorrectly. It never happens. But some judge might. Why isn't that judge entitled to immunity for dumb decisions as opposed to corrupt ones? I won't call them dumb decisions. I will agree with you to the limited extent that quasi-judicial immunity does not depend on whether a land-use commission was right or wrong. But what Zamsky teaches is when you assume multiple roles like they did here, lawmaker, in Hawaii, they may have a qualified immunity for the other roles they took on. But to the extent that they acted in a quasi-judicial fashion, aren't they absolutely immune? They acted in a quasi-judicial fashion in some respects, didn't they? The predicate of your question answers the question, to the extent, and that brings full circle to what Judge Akuto was asking, of the Hawaii Supreme Court decision. Let me actually repeat it. is going to be illuminative, if that's a word, as to what they actually did in this. If they actually acted in a quasi-judicial fashion, but they did not. You're the guy who doesn't want to wait, and I understand why, but why shouldn't we wait? Why shouldn't we put a timeout on this whole case, see what the Hawaii Supreme Court does, and then we will all be illuminated or enlightened? Well, you certainly could wait, and I would not dispute your right and authority to do so. Are you arguing in front of the Hawaii Supreme Court also? I am, Your Honor. So you guys have a date in two weeks? I wouldn't call it a date, but it's going to be fun. It's quite the record. It's one of the larger records. Is that the more interesting case? Can we switch with him? To be honest, it is a more interesting case. Well, I have to say, as I read Judge Stranz's decision, you guys were right about ten ways from Sunday. If you lose this case, I'll be astounded. The only question is how you're going to win it. It's eight, but that's pretty close to ten ways from Sunday. I do expect that we will prevail for the Hawaii Supreme Court, and I do expect the decision will provide some guidance, clearly as to qualified immunity, as Judge Okuda says, but for the reasons that I say as to quasi-judicial as well. And to answer your question as to why we shouldn't wait, I would again just point out the prejudice that Bridge has suffered by waiting over these years. And this is a commission that has not, to date, acknowledged that it's wrong in any way. They had to go back to Judge Stranz to get an amended order because they wouldn't schedule a hearing to void and rescind the order as Judge Stranz originally ordered. Given that attitude, given the animus, given the retaliatory conduct, we want to have some action pending so that we can get on. There has been a great... Well, you have an action pending at Federal Court. It's just State for the moment. It's just State, but... But what would our, I mean, assuming that we address the absolute quasi-judicial immunity and the qualified immunity as opposing counsel wants us to do, either they might win, in which case you'd be done, or they would lose, in which case the rest of the case would still be State. Is that right? Or what else would you want us to do? Well, I don't think... So you think Pullman abstention is not appropriate on the Federal claims? No, no. And I apologize if our briefs are not clear on that point. I believe Pullman abstention applies in this circumstance as to all Federal claims, including the 1983 claims, for the reasons we talked about why the Supreme Court decision would illuminate. But to get to the core of your question, I don't think that this Court can direct Judge Mulway how to rule on either quasi-judicial or qualified immunity. I researched that. I couldn't find a single case. Bill says the standard of review for this is de novo on a denial of a motion for qualified immunity. That's not what happened. So what we would do is send it, in your view, even if we were to reach those issues, we should send them back to the district judge and say, Absolutely, because those... Is there anything that's not now in the record with respect to the quasi-judicial immunity question? I mean, I understand that it's often nice to have the district judge have the first crack at it because second sight is sometimes better than first sight. But is the record in front of Judge Mulway going to be any different with respect to the quasi-judicial immunity question than the record is right now? The evidentiary record, because as I understand the posture, it's a 12B6, all the allegations of the complaint are admitted as true. So the answer to that is no from a purely evidentiary standpoint. However, as Judge Mulway correctly pointed out, whatever the Hawaii Supreme Court decides after reviewing the propriety of the conduct and the roles that they play, which I respectfully believe is outside the course of a normal judge, is going to, I think, inevitably be helpful in their discussion. I wanted to ask, and I know your time is fleeting, but I wanted to ask a question about damages. Let's assume you're successful in the Hawaii court, and the Hawaii court says this was all terrible, they shouldn't have done any of this stuff, then you'll have, in effect, a temporary taking. Yes. How will your damages on that be different than the damages you seek in the 1983 action? And at the end of the day, aren't you really saying you've deprived me of the use of my property for this period of time and I deserve compensation for it? Judge Hurwitz, and I apologize, I'm over time. It's my fault, so you should go ahead. But that's a better question than you know, because There are always better questions than I know. The case law as to the right of just compensation for a taking, and particularly a temporary taking, is tangled at best. And so it is not clear, for example, under that case law, whether or not a person such as Bridge would be entitled to consequential damages for the discriminatory act of taking or attorney's fees. And those are, among others, the additional damages that the 1983 claims provide. And it's just not clear whether they're recoverable under Hawaii state law. They're not. There's no definitive Hawaii case law. I know I've gone over time. I thank you for the question. Thank you. Mr. Winhoff, response. I'd like to make two points, and of course I'll respond to any questions that come up, too. With respect to the issue of absolute judicial immunity, your case law says, grave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity. And that's the absolute quasi-judicial immunity. So the question really here is not whether they, as you've already said, at least alluded to in your questions, our view is that the question isn't whether they did a good job as judges. Judge Stranz didn't think they did. In realistic terms, what's the burden on these individual defendants for having this damage claim while, for example, we might wait for the Hawaii Supreme Court to decide? I'm now talking not some abstract right to be free of this, but in realistic terms. In realistic terms, this is and, in fact, has been a burden on them. You have a $30 million case. We have a commissioner, at least one commissioner, and I believe two, that have been turned down for loans, for example. That is a specific example of it. And that is the kind of thing, it's a terrible stain on your credit, so your credit is basically ruling, well, this is pending. But they would still have this. Other than that, I would just go with psychological. They still have a state damages claim against them for exactly the same amount, right? Well. Because there's a state law damages claim that we wouldn't be ruling on.  We're making the same arguments, Your Honor. The point is that, and we have made that, the state law immunity is not as developed as the federal law, but there is a state law immunity in which quasi-judicial immunity has been given to parole officers, social workers. Is that an issue you think we should decide in the first instance? I understand in the federal one you say the record's developed and we can decide it. But on the state law immunity claims, you're not proposing we decide this. It's just as developed there. It's purely an issue of law. If we went back to the state court, we would make that same argument as a matter of law. So, yes, I am asking that. I mean, I guess I would say I feel more confident about the federal law issue because that's better developed. But the point that I made below, and I'm making here too, is, you know, the plaintiffs point out that there is not a state law case directly on point with respect to the quasi-judicial immunity of these folks. Not like we have Buckles, which I think applies, and Zamsky, which I don't think applies for the reasons that I pointed. But, you know, the federal court still has to proceed, and they could send it over for an advisory opinion or they would have to guess, not guess, but use their best estimate of what the state court would do. And based on a number of state court cases that we have cited in here in which quasi-judicial immunity has been extended, we think that the same law would apply here, and that's what we're asking this court to do. Can I ask one more question, please? I'm just curious. There's a stay of proceedings pending in the district court, correct? There's a stay of proceedings pending in the district court. In other words, the district court said, I'm going to abstain. The answer to that is yes.  Yes. And I'm just going to wait. Yes. Wait for what? My understanding is, well, I think the answer must be that she's waiting for a resolution in the state appellate courts because she had the district court had the resolution. Okay. Once that resolution occurs, which you and your opponent estimate will be timely, the stay will be lifted. Yes. And can you then argue to the district judge, now that the stay is lifted, rule in my immunity claims? Yes, absolutely. And we will if this court doesn't. I'm sorry. It was a long-winded way of me trying to figure out what the procedural posture was. Of course. I guess, Your Honor, if I might have a few seconds to make my other point. The question was asked of them, why should we wait? And they answered, the question for me was, why should we wait? I talked about it the first time because if we wait, then we'll have to go back through and we'll have to come back up here again. And the other point I wanted to make is, if we went to state court, it's hard for me to believe that the same result wouldn't obtain. In the same issues, the state court is going to want to hear what happened with respect to the underlying claims, not the immunity, we say anyway. The state court is going to want to hear the same thing. What's the Supreme Court going to do? They don't even know if it's a temporary or a permanent taking. Okay. Thank you, Your Honor. Thank both sides for their arguments. Bridge, Aina, Leah versus Chuck, submitted for decision.
judges: FLETCHER, IKUTA, HURWITZ